Okay, Mr. Parrish. May it please the court. Ashley Parrish on behalf of the defendant's appellants. This case presents the following underlying question. When a landlord charges a tenant a late fee, is that late fee reasonable? That question cannot be answered without looking at the individual circumstances in which the late fee is actually charged. It cannot be resolved on one size fits all class action basis. Plaintiffs convince the district court here to reach a different conclusion by one, misreading Texas law. Two, setting aside individualized issues to the detriment of both defendants and the absent class members. And finally, by improperly putting a heavy thumb on the scale in favor of class certification. What I would like to do this afternoon, your honors, is really focus on three issues in the brief. First, explain why the district court's interpretation of the Texas statute, section 92.019, is legally wrong. That statute requires that a late fee be a reasonable estimate. It does not impose an affirmative obligation on landlords to conduct a prospective estimate at the time of contracting. Second, if the proper interpretation of the statute is applied, it is clear that individual issues here predominate over the common ones and that the main plaintiffs are not typical of the rest of the class. And third, I will make the point that even if there's any doubt about the interpretation of the statute here, it is clear that the plaintiffs are arguing for an innovative interpretation of state law, one that has not been applied by any state court. And in these circumstances, it was not possible to conduct the balancing required under the superiority analysis, especially because the Texas legislature structured this statute to incentivize individual litigation and eliminated the possibility of a negative value suit. So if I may, let me start with my first point, which is really, as you can see, a focus of the briefing, which is what is the proper interpretation of the statute? And as you can see, our main gripe with the district court and with the plaintiffs is that they argue that the statute requires a prospective estimate before contracting or at the time of contracting. But that's not what the statute says. And if you take a look at the statute, the statute is focused on the fees, and it tells the reader two things about the fees, both what the fee must be, and second, when you look at when that fee must be that thing. So the first thing you look at is what must that fee be? It must be a reasonable estimate. That's a noun, a reasonable estimate of the landlord's uncertain damages resulting from the late payment of rent. And then it tells you, well, that's what it has to be. And then when do you look at that? Well, it says that the landlord is prohibited from charging. So the question under the statute is when a late fee is charged, is it reasonable? What is not in the statute is any language that requires that a landlord must engage in a process where the estimate is a prospective estimate done ex-ante, and there's nothing in the statute that requires that that be done at the time of contracting. If there's any doubt about that interpretation of the text, it's confirmed by the structure of the statute. The statute has a specific provision that allows for individual tenants to bring lawsuits. It's an unusual provision in the sense that it has both the treble damages, plus $100 fee penalty, plus attorney fees and costs. The idea of that, like 29 other provisions in the Texas Property Code, is to ensure that when there is a dispute between a landlord and a tenant, the tenant can bring the landlord to court, small claims court or otherwise, in order to get a recovery. It would make no sense to set up a statute that, in our view of the world, is supposed to give the tenant a remedy if the remedy is not for the fact that the fee that's been charged is unreasonable, but rather a strict liability regime, which is if the landlord has not done a prospective estimate, it cannot charge a fee at all. So there's a mismatch between the way that the statute is structured, which is to give remedies to tenants, and the way that the district court read the statute, which is more in the way of a strict liability regulatory regime. Of course, I might just mention here, as the Texas Association, Apartment Association brief explains in the Miki in some detail, the purpose of the statute was to codify a common law standard. Common law standards govern the relationship between parties, in which case it makes all the sense in the world that you would say, is the fee charged reasonable? It makes no sense under a common law standard to think that there is a prerequisite of a process that a manufacturer sorry, a landlord must go through in order to charge a late fee. And then if any of that was in doubt, and we don't think it is, but the interpretive principles all work in our direction, both under Texas law and under Fifth Circuit law. So the district court said that not only did he think that our interpretation of the statute was wrong, but that he thought that there was no possible reading other than the reading he ascribed to the statute, which just doesn't make any sense. At a minimum, the statute has some ambiguity as to what it means for a fee to be reasonable estimate. And under Texas law, because it's a penal statute, it must be interpreted away from imposing liability. Of course, that principle of Texas law is also consistent with this court's principles of what you do when you're making an eerie guess, which in case after case, but the Barfield case is the case we cite in our brief. This court says we will not make eerie guesses when we are giving state laws innovative or expansive interpretations that expand liability beyond where they were before. And again, as I mentioned, no state court has ever interpreted this statute the way that plaintiffs would like it to be interpreted. Our view again is that the statute is quite straightforward. It's a common law standard. It is designed to ensure that if a late fee is charged, the tenant has a remedy if that charge is unreasonable. Once you look at it that way, it is very clear under this court's precedents and under general principles of class action. I start with the In re Willborn case and also the O'Sullivan cases. Both of those cases make very clear that if you're talking about the reasonableness of a fee or in the case of O'Sullivan's the reasonable relationship of a charge to services rendered, those reasonableness inquiries of their nature require looking at the, in the words of In re Willborn, the how and why and when or simply the circumstances in which the fee is charged. You cannot do that in an individual tenant situation without looking at what are the arguments as to why the fee is unreasonable. How late was it paid? What were the consequences to the landlord in that specific circumstance? What are the arguments that the individual tenant might have as to why that fee should not have been assessed? If the class were tailored in such a way that the class members were all within a reasonable approximation of each other on those facts, what's, why is there an impediment to classification, to class certification? Well, because again, Your Honor, I think this goes maybe to the point I was just going to make, which is that each individual tenant has a right to come into the court and argue that whatever might be true for everybody else was not true in the particular circumstances and that even though in this case a $75 fee is something that is well within the reason and has been a type of fee that's charged all the time, they can say under their particular circumstances it's not and it doesn't matter that tenants B, C, and D might not have as good of argument. On the other hand, what would be some of those arguments? Well, so for example, if you take a look at the named plaintiffs in this case, we have the Clevens. The Clevens, they had a late, two late fee payments. On the first late fee payment, the initial fee, the $75 fee was waived and they agreed to pay the daily $15 charges. On the second one, it wasn't waived and they paid everything. In the case of the Arianos, who are the other plaintiffs in the Cleven case, they paid rent three days late 19 times in a row. For them, it was just that they always got their paycheck after the due date of the late, so they just baked it into the cost of the rent. In the case of the Brown, it's clear that Mr. Brown was looking to basically set up litigation. He had an automatic payment set up. He canceled the late payment. As a result, his rent was paid late. We waived the fee, so the next month he paid late again and that time the fee was not waived. In each of those circumstances, there would be a different argument in the sense of the Clevens. Are they somehow stopped from the fact that they in the case of the Arianos, the fact that it happened over and over again and the amount of effort that is made by the landlord in order to track them down? Well, if the statute precludes any kind of waiver at all on the part of the tenant, that doesn't get you anywhere. Well, Your Honor, with respect, that's not what the statute says. Well, we might disagree with you. Well, we might, Your Honor, but I'd ask to sort of convince you otherwise, but we could also talk about estoppel principles. What the statute does say is the payment of the fee itself is not a waiver, but that doesn't mean that the statute gets rid of all situations by conduct. If categorically a $75 fee is unreasonable for $200 a month rent, it doesn't matter whether you waived it or not, it seems to me, if it's categorically unreasonable. So, Your Honor, let me address that in two ways, which is first, it's important to recognize that is not the claim. What they are arguing is not that it's a $200, it's categorically unreasonable in that sense. They are arguing that there was no prospective estimate and therefore they don't even have to look at it. We might disagree with them on that too. That doesn't mean that a class still can't be certified. So, if you agree with me on that and disagree with them on that, then what Your Honor would want to first do is ask, what is the system that has been set up by the legislature? We know in the new legislation that has come through that the legislature has said that a 10% charge or a $150 charge, whichever is smaller, is both permissible. That's automatically reasonable. Anything above that, you'd have to show that it's a reasonable estimate of your uncertain damages. It would be very odd for a court to now put itself in the position of making a judgment contrary to the legislature that would say something less than what it thinks is reasonable. Well, that statute only took effect as of a certain date. That doesn't necessarily mean that everything prior to that was reasonable if it fell within that range. That's a decision on the merits. My question is, if everybody's paying the same rent, the late fee is the same for everybody, the $10 daily charge is the same for everybody, why is that not certifiable? So, what I would say, Your Honor, is that in any one of those circumstances, both the plaintiff, whoever the tenant is, plus the landlord, are allowed to argue the individual circumstances as to why the late fee is appropriate or inappropriate. The plaintiff wouldn't need an argument if it's categorical. They win. Now, and I don't, if we disagree with you on the waiver thing, what other defenses would you have? Well, just that under the circumstance, it actually does represent the actual cost incurred. Well, I'm saying if on the merits it's decided it's not. But, Your Honor, how are you going to make, with respect, how are you going to make that determination? And, I mean, we could all imagine a situation of a tenant. Well, you're going to have to make it case by case. Why can't it be made in a class action? So, this gets my last point about superiority, which is that there is a reason why the legislature structured the statute to incentivize individual litigation, because it recognized that if an individual went in, these things would get negotiated between the parties, and it didn't want judges to make, sort of, finger-in-the-air determinations as to whether 50, 75, 150 is reasonable. So, in your hypothetical, we can all think of a situation where a landlord is charged a $10,000 late fee, but those don't happen. What we're talking about here is a late fee on its face that is consistent with what's been done in Texas for a long time for reasonable landlords. We now know, based on the legislature's judgment, that it's well below what they now think. Well, that's why you don't go to the class action right away, because you don't have any basis for understanding whether the class action is going to be more efficient or whether these issues are better raised in individual litigation in small claims court, like they're being done right now. And so, if you instantly go to class action litigation, what you do is you do two things. One is, if we win, then you eliminate any right of any tenant to say that in their particular circumstances, the fee actually wasn't reasonable. Now, we would say that's very small, it doesn't happen that often, but every tenant has the right to come in if they think it's unreasonable and say, look, $75 may be fine in the run-of-the-mill case, but in my particular case, it's not. And in the defendant's context, you run the risk that if you go the other way, you wipe out our individual ability to say that for this particular tenant, it clearly was appropriate. This is an opt-out class, right? True, Your Honor, but that doesn't affect the Rule 23 analysis, which is that you have to protect, as the court, the interests of the absent class members up front. And, Your Honor, what I would say is that the clear thing about how this is set up is that landlords set a reasonable rate that's well below the upper level of reasonableness, and then they give individual property managers the ability to waive it, which, as you can see from the facts alleged in these by having a one-size-fits-all litigation, you get rid of the ability for this back-and-forth between landlords and tenants that the legislature wanted. I'm happy to answer more questions, but I would like to save a little time for rebuttal. You have saved your time for rebuttal. Thank you. Thank you very much. May it please the Court. Russell Post on behalf of the case for class action. It involves a single defendant, a single statute, a common course of conduct, and a fixed statutory penalty. It is nothing like the case. Doesn't the reasonableness of the penalty depend, at least to some extent, on the amount of the rent? Your Honor, the reasonableness of the penalty I don't believe is related to the amount of the penalty. The penalty policy is a uniform policy in the Clevin case of $75 for the first late fee and then at least $10 per day thereafter. In the Brown case, it is correct that the late fee is 10% of the monthly rent, but there's no evidence in the record of Brown that any determination has ever been undertaken by MAA to make any judgment about whether that is a reasonable estimate of the damages. And so, in Clevin and in Brown, you have a common, uniform late fee. What if we disagree with your interpretation of the statute? They don't have to show that they've written down the middle gymnastics, but that we take the common law view. That's what this was intended to be. So then we have a situation where 10% of $500 might not be the amount of the monthly rent. Well, Your Honor, I think that if you were to disagree with our initial position, which is that as the Court recognizes, the landlord has to make a prospective determination about whether a late fee is a reasonable estimate, then there's a second class-wide common issue that would have to be reached before you would even reach the question that the Court is contemplating, which is whether the calculation that the defendants are doing represents even a determination of damages. What they're doing is making a class-wide uniform assessment of their collection costs, and they are saying that they can aggregate those collection costs on a pro rata basis to the individual tenants, and that that becomes a reasonable estimate of damages. The second class-wide question, even if the Court were to disagree about the first question about whether a prospective estimate is required, would be whether those overhead costs, that standard operating expense, is even damages under the statute. And if the class prevails on that issue, then the entire class prevails at one stroke, and then the question the Court's just posed has never even been reached. If the defendants prevailed on that second uniform issue, then the question would arise, does this aggregate determination about their total late fee expenses as they class them, their overhead costs, have a reasonable relationship to the total late fees they've charged? Their theory is that that is a uniform determination. They're not arguing in the District Court below that there are individual assessments of late fees that are calibrated to the individual rent paid? I get that. Okay. Point is, $75 might be, under the common law, it might be reasonable to charge someone that when you're paying $2,000 or $3,000 a month for rent. It may not be reasonable when you're paying $300 or $400 a month. I don't know. I'm just saying that under the common law, even though it might be reasonable under certain circumstances, the common law won't enforce it beyond some threshold. Are you with me on the penalties? I am, Your Honor. Now, you understand, of course, I can't concede the premise that it's the common law. Assuming that we disagree with your interpretation of the statute. I understand. It still seems to me there's got to be some proportionality between the penalty and the rental payment. But I think, Your Honor, in that instance, what the Court's cases repeatedly say is when you're making this determination about commonality and predominance, you have to look at how the case will be tried. You have to look beyond the the way MAA has defended this case, the way they would propose to try the case, is not with the argument that the Court is posing. It is that they can aggregate all their late fees and they can justify them as a reasonable estimate by looking at the entire class of tenants without making individual. That's their current defense. They are entitled to change their defense. Well, Your Honor, they have got to demonstrate an abuse of discretion by the District Court in Judge Pittman abused his discretion by failing to anticipate an argument about predominance that wasn't even before him at the class certification hearing. And so I don't think that it's correct to assume that the fact that there might be different rents, and by the way, I'm not aware that the record reflects anything about significant variances in different rents in these properties in the Brown case. That would be the plaintiff's burden if that really is material. That's the you have a uniform late fee policy that uniformly fails to satisfy the requirement of a reasonable estimate. If the defendant wanted to argue that there are individualized issues, that is what the rigorous analysis test works both ways. Rigorous analysis obviously begins with putting the burden on the plaintiff to demonstrate common predominant issues, and we embrace that analysis. This class was very carefully calibrated around those rules. But if a defendant then wants to argue that there are, in fact, individualized issues that defeat predominance, it's incumbent upon the defendant to come forward and make that argument to the District Court. And the argument, and if I may, I'd like to give the Court some record citations because I'm not sure that I fully explained this in the brief. When I say that this is a competition of two competing class-wide theories of liability, I'm not just whistling Dixie. That is based on what the parties have in common. The plaintiff's principle theory, which is that the requirement of a reasonable estimate by its plain language requires a prospective determination. But I want to actually give you the citations so you can see what the defendants are arguing. If you look at pages 1, 2, 3, 0, 4 to 15 of the Clevin record, you will see the defendant's argument about how they defend a reasonable estimate of damages. And it is a class-wide aggregation of all of their collection costs compared to a class-wide aggregation of all of the late fees. And, Judge Owen, we don't think that's a correct approach to the reasonable estimate test. But as I think your question anticipated, whoever is right about that is going to win in one stroke. If we're right that that's not a legitimate, reasonable estimate of damages, the class wins and every class member prevails. If they're correct that those collection costs are, in fact, damages, and that that methodology after the fact is a reasonable estimate of those damages, then they will defeat every class claim as a matter of law. Well, there's a third possibility. That it's, as to some situations, it's reasonable. As to others, it's not. But, Your Honor, they're not arguing that. That's my point. If you look in the record, that's not the district court is that on a aggregate basis. That the district court can find that it's reasonable as to some, up to a point, it's not reasonable beyond that. Your Honor, that is, with respect, that is completely hypothetical. Nothing in this record provides any foundation for that argument. So, it's conceivable that there could be a lease for $100 and a lease for $100,000. And, but this record doesn't support that argument. These defendants haven't developed the record to make that argument. And so, if they wanted to make the argument that there are significant variances in the amounts of rent, that in the Brown case, and I emphasize this whole theory would be relevant only to the Brown case and not to the Clevin case, they would have been charged with the responsibility of demonstrating a basis for that kind of individualized determination. And I submit the record doesn't support that argument. And so, when you look at how the case would be tried, as this court's precedent requires us to do, you see a common basis of determination on both sides. I want to put this in precise context by talking about the counter claims that are alleged against the named plaintiffs. Because if there was a basis to make this kind of individualized assessment, you would surely think it would be raised with respect to the named plaintiffs. Counsel talked about some of the distinctive facts about the individual plaintiffs' claims. None of those facts have anything to do with the class definition and the class standard of liability. But with respect to the counter claims, when we challenged the defendants to identify the damages that they allege they have suffered as a result of the individual plaintiffs' breach, the only argument they could make was the same argument they make in defense of the reasonable estimate of damages. It was that their overall aggregate collection costs represent their damages and a portion of those damages are attributable to the plaintiffs. And let me give you the citation for that purpose so you can see it, because I don't think I gave you that citation in our brief. That's at pages 2550 to 51, 5886 to 87, and 5942 of the Clevin record. That's where you'll see the clash on this issue. And so when I tell the court they're not coming forward with any meaningful difference in individualized assessments about the relationship of late fees to damages caused by individual tenants, you can see it in the clash in the district court papers. This record supports no variation whatsoever in the way in which the individual tenants have been charged late fees. I would like to deal specifically with counsel's argument that the O'Sullivan case and the N. Ray Wilborn case in some way support his argument, because those cases are quite different. Those are cases in which the reasonableness of a particular decision in an individual transaction had to be established. In O'Sullivan, that's the case involving mortgage lenders and charges that were being assessed by the lenders for conduct that was alleged to be unauthorized practice of law. And the court said there's individualized decisions in each of those transactions as to whether that particular conduct occurred. And so you'd have to go transaction by transaction to determine whether those unlawful charges had been assessed. The year after O'Sullivan, in the N. Ray Monumental Life decision, the court distinguished Sullivan in a case like this one, where you had a common class-wide course of conduct and liability would be proved true or false for the entire class. And the court said this is very different from O'Sullivan because the reasonableness issue here is a class-wide issue. It is not an issue that requires individualized determinations. The same was true in N. Ray Wilborn. But Monumental was a negative value case, and the court placed a lot of emphasis on that. That is true, Your Honor. Monumental was certainly a negative value case. And if I may, I'll take that as an entree to speak to the superiority issue, because I think the suggestion that these are in any way meaningfully valuable claims that could, as a matter of law, defeat superiority, fails to give appropriate deference to the standard of review. The district court here weighed the value of the claims and determined that the fact that these claims might have some positive value does not outweigh the other factors in the superiority analysis. And I think it's important to put this in context. In Monumental Life, the court talked about the ultimate negative value case. Contrast that with Kistana, where the court emphasized that individual claims in that case could have been worth millions of dollars, with the possibility of punitive damages. And for that reason, a class adjudication was not necessary. The claims here, we have estimated, and this is from the evidence in the record, you have in the Clevin case, you have claims that are on behalf of 49,000 tenants for total late fees of $11.6 million. That's an average per tenant of $234. For the Brown case, the numbers are almost identical. The calculation is $230 per tenant. The suggestion that even with the incentives the statute permits, any individual tenant would have an incentive to litigate against one of the largest residential property managers in the country, presenting the kind of forceful defense with the kind of accounting experts, and the court's seen from the briefing the debacle involving the Yardie Voyager system that required expensive expert analysis to untangle. The suggestion that those are in some way superior claims to be litigated as an individual claim rather than a class claim, I think doesn't give appropriate deference to the district court's discretion. And so these are in any meaningful sense negative value claims when you look at the actual cost of litigating the claims, and certainly when you take into account the factors that bear on the superiority analysis. The suggestion that there would be a matter of law rule that unless there's a negative value claim on a per se basis, you cannot certify the claim, that would be unprecedented in this court's prudence and I think in any circuit. That would potentially eliminate, for example, federal securities class actions, antitrust class actions, which frequently have claimants of significant value leading the charge. And I would point the court to this court's decision in Bertulli. If I was going to look to one comparable case, one case that I think charts the path to affirmance here, I think Bertulli is as good a case as any. And in Bertulli, the court recognized that there were some claims there worth as much as $29,000, but most of the claims would be small value claims. And the fact that there was the possibility of a fee-shifting recovery and the fact that there were possibilities of viable claims did not indicate that the district court had abused its discretion by assessing all of the factors that go into the superiority analysis and determining that a class treatment would be superior. While I'm speaking to superiority, I should address what I understand to be an eerie argument that there's some per se rule that simply because it's a state law claim that appears in federal court, a class cannot be certified. Again, there's no authority for that proposition. I think that argument is foreclosed by the Supreme Court's decision in Shady Grove. Justice Scalia made very precise in Shady Grove that a class action is simply another method of adjudication of claims that have been joined together. It does not change the substantive rights of the parties. The plaintiffs here, who are required to be in federal court by virtue of suing a diverse defendant, have a right to an adjudication of the claims. And a federal court is perfectly empowered to interpret this statute. We're not dealing with a situation like Castano, where you're dealing with 50 different states' laws, choice of law problems, novel untested liability theories of common law as to which it was legitimate to ask whether certain states would even recognize the cause of action. We have a statute that the Texas legislature has enacted that courts are obligated to enforce. And the notion that a federal court cannot construe a statute as a matter of law in a class action context I think is unprecedented and, again, can't support the suggestion that there's been an abuse of discretion. I would turn briefly to the matter of the interpretation of the statute since my colleague has spoken to it. And I do want to offer the court our perspective on that. As I've indicated, whichever party is right about the meaning of the statute, the entire class wins or loses as one stroke. That's why we've argued that this case is like Amgen in the sense that determining these class-wide questions of liability because of the way the statute is written mean that the entire class will prevail subject only to a mechanical damage calculation or the entire class will fail. If we determine either that the district court didn't interpret the statute or that it interpreted the statute incorrectly, wouldn't that require a remand for the district court to reevaluate all of the class action factors? I don't think so, Your Honor, because I think that as I understand the argument before the court, the argument that the district court erred in interpreting the statute as it has interpreted it to require a prospective estimate based on the ordinary meaning of the word estimate and the way this statute is questioned and would lead to the next class-wide question, which is whether aggregation of these collection costs are damages. That doesn't change the district court's analysis of whether class certification is appropriate at all. And that's what the court said. I'm not making this up. Judge Pittman anticipated this and said whichever party is right about the meaning of the statute, the issue of liability is going to be determined on a class-wide basis. And on that question of whether the district court was right, I would like to add one additional element to the interpretive puzzle. I apologize to the court. I did not make this point in our brief. And I think to the extent the court really looks into the interpretation of the statute, it is meaningful. Because the statute, as the court knows, requires a reasonable estimate of the landlord's damages from late payment of rent. We believe, and Judge Pittman has found, the ordinary meaning of estimate in this context requires a prospective determination. We believe that necessarily is a class-wide determination, since it is focusing on the landlord's damages from late payment of rent categorically, not from a particular tenant's breach. But what I didn't say in the brief that the court needs to understand is that that is subsection A-2 of the statute. In subsection A-1, the statute provides that that late fee has to be included in the written lease. By definition, a landlord cannot include the late fee in a written lease unless it has made a prospective determination. And that cannot be done individualized based on a breach that has not yet occurred. It necessarily is a class-wide prospective determination. If the court has no further questions, I'll turn it over to Judge Pittman. Thank you, Your Honors. I'd like to make four points. First, notice on the prospective estimate. He hardly defends that argument until the very end there. He says it's a merits question, but this court's precedents are clear that when merits is intertwined with class certification, you can't certify the class and then worry about the merits question later. This is an attempt to interpret the Texas statute in a way that's impermissible in order to gerrymander a class. And just as a last note on his last few comments, he said he came up with a new argument not in the brief, which means it's probably waived. But A-1 doesn't say anything about being in the lease. It says notice of the fee has to be in the lease. So, for example, if a landlord were to say, we will charge a late fee up to $200, but it never charged a late fee more than a dollar, the tenant would only have an argument as to whether the $1 charge was reasonable, not whether the $200 charge that was up to in the lease. Because the focus in the statute is on the fee, not on what can be included in the lease. When the legislature wanted to talk about what could be in the lease, it did that differently. And you can see that, for example, in subsection D. Second, he shifted to reasonableness. That was most of his argument, Judge Owen, picking up on your argument. But the key point to recognize here is that the district court's entire certification order is not based on this alternative theory of reasonableness. It's based entirely on this idea that the statute can only be read to require a prospective estimate. And in fact, he talked about, oh, there will be trial. What will happen at trial? We know exactly what will happen at trial. The district court, before this case, when this case was still before this court on a Rule 23-F petition, he granted summary judgment on the theory that there has been no predictive estimate, and therefore there are nothing else to resolve except for the question of how much damage is. So we're not talking about a trial over the reasonableness. He has already applied the theory of a predictive estimate that opposing counsel is not really willing to defend. He also, my opposing counsel, misunderstands how liquidated damages are supposed to work, which is what this provision is similar to. There's always two inquiries on a liquidated damages provision. First, is it generally acceptable? And then second, even if it is generally acceptable, is it excessive in the particular circumstances? Let me use perhaps a silly analogy, but I think it's easy to get your arms around. This court is very generous. It gives every litigant almost 20 minutes of argument time. Other courts give only five minutes. If Congress were to pass a statute tomorrow that said individual litigants are entitled to a reasonable argument time, and if they don't get it, they can appeal to some higher body, you would continue to say it would be 20 minutes for all arguments, but you would give discretion to yourselves or the clerk to make a judgment in a particular case. If challenged on that, you would say the 20 minutes is reasonable. It has always been reasonable, but also in the particular circumstances, this is not an unusual case where we aren't allowed to apply it. That's the same thing here. We already know under the new law and laws across the country that a 10% fee or a $75 fee, which is what we're talking about on their face, are reasonable. So the question, no doubt that we would defend our position by saying that the $75 matches up with the type of costs that we incur in a run-of-the-mill case, but we are also entitled and individual class members are entitled to make the argument that their case is different, and we're allowed to respond to that, which is precisely the reason why the Texas legislature created a statute that was designed to be individually litigated for the benefit of individual tenants, not the benefit for a class as a whole to be led by the lawyers. And that gets me to my last point, is that if you take a look at the superiority argument, our argument is that the district court here legally erred. If you take a look at page 5470 of the record excerpts, you will see the court engages in the following analysis. The district court first says a class action is more efficient than individual lawsuits. That's all he says. Then he walks through each of the arguments that have been pointed out in Castano and other cases and say none of these are per se rules that prevent me from exercising my discretion. But that applies the wrong standard. The correct standard of Castano is not to say, well of course class actions are more efficient. The proper standard is to take a look at everything at the same time. And if you do that, you come up with the following things. First, you say this is an innovative theory of state law about predictive estimates that doesn't apply under the statute. No Texas court has embraced it. Second, you say in the neary context, we are not going to expand the law to create liability where it doesn't exist before. Third, you say, well okay, what is the advantages then of having class action litigation? And you look at the statute and you see that the Texas legislature has specifically created a remedy to make a non-negative suit. Now you'll see both today my opposing counsel and in his brief, he says, well there's lots of reasons to think, well maybe they won't bring these litigation suits. If that's true, that is his burden to prove. He has never put on any evidence either in the district court or here. And it would make no sense. Why would we think that the Texas legislature would get it so wrong? Your Honor, the Texas legislature created the statute for individual litigation. We'd ask that you uphold its judgment by reversing the district court and instructing the court to decertify the class. Thank you very much. There is your case and all of today's cases are under submission and the court is in recess until one o'clock tomorrow.